## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NOKSEL CELIK BORU SANAYI A.S., )<br><br>*Plaintiff,* )<br><br>v. )<br><br>THE UNITED STATES, )<br><br>*Defendant.* ) | Court No. 21-00140 |

## COMPLAINT

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Noksel Celik Boru Sanayi A.S. ("Noksel" or "Plaintiff"), by and through its undersigned attorneys, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1.      This is an appeal from the final results of the antidumping duty administrative review of *Light-Walled Rectangular Pipe and Tube From Turkey* ("LWRP&T from Turkey") The period of review ("POR") is May 1, 2018 through April 30, 2019.

2.      On February 24, 2021, the U.S. Department of Commerce, International Trade Administration, Enforcement and Compliance ("Commerce") published its final results finding that LWRP&T from Turkey is being or is likely being sold at less than fair value ("LTFV"). *Light-Walled Rectangular Pipe and Tube From Turkey: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2018–2019*, 86 Fed. Reg. 11230 (Dep't Commerce Feb. 24, 2021) ("*Final AD Results*").  Commerce's factual and legal conclusions underlying the *Final AD Results* are set forth in its Issues and Decision Memorandum.  Memorandum from J. Maeder to C. March, re: 2018-2019 Antidumping Duty Administrative Review of Light-Walled Rectangular Pipe and Tube from Turkey: Issues and

AFDOCS/23902445.6

Decision Memorandum for the Final Results (Feb. 16, 2021) ("*Final I&D Memo*") (available at
https://enforcement.trade.gov/frn/summary/turkey/2021-03788-1.pdf).

## JURISDICTION

3.      Plaintiff brings this action pursuant to Sections 516A(a)(2)(A)(i)(I) and
516A(a)(2)(B)(iii) of the Tariff Act of 1930, *as amended* (the "Act"), 19 U.S.C.
§§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii).  Plaintiff contests Commerce's *Final AD
Results*, specifically as applied to Plaintiff.  This Court has jurisdiction over this action pursuant
to 28 U.S.C. § 1581(c).

## STANDING

4.      Noksel is an interested party to the proceeding under Sections 516A(f)(3) and
771(9)(A) of the Act, codified at 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A), respectively.  Noksel
is a foreign manufacturer and exporter of the subject merchandise.  Specifically, Noksel
participated actively at all stages of the review by submitting questionnaire responses and briefs.

5.      Noksel, therefore, has standing to bring this action under 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6.      This Complaint is being filed concurrently with the summons initiating this
action.  The summons was timely filed on March 26, 2021 (ECF No. 1), within thirty (30) days
of Commerce's publication of the *Final AD Results*.  *See* 86 Fed. Reg. at 11231.  In accordance
with USCIT R. 3(a)(2), 5(e) and 6(a), and pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28
U.S.C. § 2636(c), Plaintiff's Complaint is timely.

## STANDARD OF REVIEW

7.      This Court must remand any administrative determination by Commerce which is
"unsupported by substantial evidence on the record" as a whole, or is "otherwise not in
accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

2

8.     When reviewing whether Commerce's actions are unsupported by substantial evidence, the Court assesses whether the agency action is "unreasonable" given the record as a whole.  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).  Substantial evidence represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *DuPont Teijin Films USA, LP v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

9.     When reviewing Commerce's statutory interpretations, the Court applies the two-part framework set forth in the Supreme Court's opinion in *Chevron*.  *Union Steel v. United States*, 713 F.3d 1101, 1106–07 (Fed. Cir. 2013) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984)).  Under *Chevron*, to determine whether an agency's interpretation of the statute is entitled to deference, the Court conducts a two-part test.  Under the first prong of this test, where Congress has spoken directly to the question at issue, the Court and the agency must give effect to the unambiguously expressed intent of Congress.  *See* 467 U.S. at 842–43.  If, however, the statute is vague or silent on an issue, the Court upholds the agency's interpretation provided that the interpretation is reasonable.  *See id*. at 843.

10.     This Court has found Commerce's determinations unlawful "where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions."  *Rhone-Poulenc, Inc. v. United States*,  20 CIT 573, 575, 927 F. Supp. 451, 454 (1996); *see also Asociacion Colombiana de Exportadores de Flores, v. United States*, 22 CIT 173, 185, 6 F. Supp. 2d 865, 880 (1998).

## STATEMENT OF FACTS

11.     On May 1, 2019, Commerce published a notice of opportunity to request an administrative review of the antidumping order on rebar from Turkey covering the period of May 1, 2018 through April 30, 2019.  *See Antidumping or Countervailing Duty Order, Finding, or*

*Suspended Investigation; Opportunity to Request Administrative Review*, 84 Fed. Reg. 18479

(Dep't Commerce May. 1, 2019). On May 31, 2019, Independence Tube Corporation, a Nucor

company, and Southland Tube, Incorporated, a Nucor company (collectively, "Nucor") requested

an administrative review of the sales and shipments of subject merchandise for the May 1, 2018

through April 30, 2019 POR.

12.    Commerce subsequently published a notice of initiation of an administrative

review of the antidumping order on LWRP&T from Turkey on July 15, 2019.  *See Initiation of*

*Antidumping and Countervailing Duty Administrative Reviews*, 84 Fed. Reg. 33739, 33748

(Dep't Commerce July 15, 2019).  Commerce initiated the review pursuant to Section 751(a)(1)

of the Act, as amended, 19 U.S.C. § 1675(a)(1), and 19 C.F.R. § 351.213. *See id.* at 33754.

Noksel was selected as a mandatory respondent in Commerce's review, along with Agir

Haddecilik A.S. ("Agir"). On October 15, 2019, Nucor timely withdrew its request for a review

of four companies, including Agir. *See* Letter from Nucor Pipe Mills to the Department, re:

Partial Withdrawal of Request for Administrative Review (Oct. 15, 2019).

13.    Noksel participated in the proceeding through the filing of questionnaire

responses, supplemental questionnaire responses, and submission of legal arguments. On

September 3, 2019, Noksel submitted its response to Section A of Commerce's AD

Questionnaire, *see* Noksel Section A Questionnaire Response (Sept. 3, 2019), and later, on

September 20, 2019, Noksel submitted its responses to Sections B, C, and D of the AD

Questionnaire. *See* Noksel Section B-D Questionnaire Response (Sept. 20, 2019). In November

2019 through January 2020, Noksel submitted responses to supplemental questionnaires issued

by Commerce. *See e.g.*, Noksel Supplemental Section A Questionnaire Response (Dec. 1, 2019);

Noksel Supplemental Section B Questionnaire Response (Jan. 3, 2020); Noksel Supplemental

Section C Questionnaire Response (Jan. 7, 2020); Noksel Supplemental Section D Questionnaire

Response (Jan. 28, 2020). Noksel submitted a further response to Section D of Commerce's

original questionnaires in April 2020, *see* Noksel High Inflation Cost of Production and

Constructed Value Questionnaire Response (Apr. 2, 2020), and submitted further responses to

Commerce's supplemental questionnaires in June and July of 2020. *See* Noksel Supplemental 6

Questionnaire Response (June 18, 2020); Noksel Supplemental Sections A-B-C-D Questionnaire

Response (Jul. 2, 2020); Noksel Supplemental Section D Questionnaire Response (July 7, 2020).

      14.     On July 24, 2020, the Department issued its preliminary results in which it

assigned Noksel a weighted average dumping margin of 23.39 percent. *Light-Walled*

*Rectangular Pipe and Tube From Turkey: Preliminary Results of Antidumping Duty*

*Administrative Review, Partial Rescission, and Preliminary Determination of No Shipments;*

*2018-2019*, 85 Fed. Reg. 44861, 44862 (Dep't Commerce July 24, 2020) ("*Preliminary Results*").

Commerce's factual and legal conclusions underlying its preliminary results are set forth in the

Preliminary Results Decision Memorandum.  Memorandum from J. Maeder to J. Kessler, re:

Decision Memorandum for Preliminary Results of the Antidumping Administrative Review:

Light-Walled Rectangular Pipe and Tube from Turkey; 2018-2019 (Jul. 20, 2020) ("*Preliminary*

*Results Memo*"), available at https://enforcement.trade.gov/frn/summary/turkey/2020-16072-

1.pdf.

      15.     In the *Preliminary Results*, Commerce did not make Noksel's claimed duty

drawback adjustment for POR shipments to the United States under inward processing

certificates ("IPCs") based on a finding that the IPCs were not closed. *Preliminary Results Memo*

at 9. Commerce also determined that Noksel did not provide record evidence to support its claim

that certain IPCs were related to exports of subject merchandise to the United States during the

POR. *See id.* at 8-9. Commerce further determined in the *Preliminary Results Memo* that additional tariffs paid on subject imports pursuant to Section 232 of the Trade Expansion Act of 1962 (19 U.S.C. §1862) should be deducted from the export price of Noksel's U.S. sales as a movement expense along with ordinary Customs duties. *See id.* at 8.

16.     On August 24, 2020, Noksel submitted a case brief contesting, amongst other things, Commerce's denial of Noksel's claimed duty drawback adjustment and the deduction of Section 232 tarrifs from Noksel's export price. *See* Noksel's Case Brief (Aug. 24, 2020). Specifically, Noksel argued that the Section 232 tariffs are "special" tariffs, rather than ordinary Customs duties, because they are remedial (*i.e.* intended to remedy alleged harm to the U.S. domestic industry from imports that had already occurred), temporary, and treated differently than normal duties in the Harmonized Tariff Scheduled ("HTS"). *Id.* at 6. As such, the deduction of the special Section 232 tariffs from U.S. price is contrary to their longstanding, and recently affirmed, interpretation of the antidumping statute (19 U.S.C. § 1677a(c)(2)(A)) and imposes a double-remedy contrary to the statute. *See id.* at 6-20. Noksel further argued it was entitled to the full duty drawback adjustment claimed because the IPCs at issue were closed pursuant to Commerce's standard when Noksel applied to the Government of Turkey ("GOT") for their closure. *See id.* at 20-24.

17.     On February 24, 2021, the Department published its *Final AD Results*, assigning Noksel a weighted- average dumping margin of 35.06 percent. *See* 86 Fed. Reg. at 11230-31. The challenged determinations, findings, and conclusions are set out in the accompanying *Final I&D Memo*. In the *Final AD Results*, Commerce continued to deny Noksel's claimed duty drawback adjustment on the basis that an application for closure to the GOT was not sufficient for an IPC to be considered closed. *See Final I&D Memo* at 5-8. Commerce also continued to find that the

"section 232 duties constitute normal U.S. import duties that should be deducted from Noksel's U.S. price pursuant to section 772(c)(2)(A) of the Act." *See id.* at 5.

18.     The *Final Results* are unsupported by substantial evidence on the record and are otherwise not in accordance with law with respect to the matters set forth in the following counts.

## STATEMENT OF CLAIMS

### COUNT I

19.     The facts and allegations contained in paragraphs 1 through 18 are restated and incorporated herein by reference.

20.     Commerce's decision to deny Noksel's claimed duty drawback adjustment on the basis the IPCs were not "closed" is contrary to law and unsupported by substantial evidence on the record. Specifically, 19 U.S.C. § 1677a(c)(1)(B) requires that U.S price be increased by the amount of any import duties rebated or not collected "by reason of the exportation of the subject merchandise to the United States . . . ." Consistent with the plain language of the statute, and Commerce's longstanding two-prong test for determining whether a drawback adjustment may be granted,  Noksel was entitled to an adjustment to U.S. price for the entire amount of the import duty rebated or not collected on its export sales. Commerce has found that the import duty exemptions under the Turkish duty drawback program are linked to exportation. Further, the IPCs under which Noksel received duty drawback during the POR were fully closed when Noksel applied to the GOT for their closure because, at that point, Noksel was no longer permitted to add import or export information. Record evidence demonstrates that Noksel completed all imports and exports under the IPCs claimed, and that those IPCs were related to exports of subject merchandise to the United States during the POR. Commerce's decision in the *Final*

7

*Determination* to deny the duty drawback adjustment is thus unsupported by substantial evidence and is otherwise not in accordance with law.

**COUNT II**

21.     The facts and allegations contained in paragraphs 1 through 20 are restated and incorporated herein by reference.

22.     Commerce should not deduct Section 232 tariffs paid by Noksel from the export price of its U.S. sales because section 232 tariffs are "special" tariffs imposed pursuant to a specific congressional delegation of tariff making authority to the executive branch, rather than U.S. import duties within the meaning of the antidumping statute. The Section 232 tariffs are remedial, temporary, and treated differently than normal customs duties in the HTS, and their deduction imports imposes a double-remedy contrary to the statute. This is especially true of the additional 25 percent duties, which were imposed on imports from Turkey only, raising the total Section 232 duty rate to 50 percent for certain entries during the POR.[1] Commerce determination to treat the special Section 232 tariffs as ordinary customs duties and deduct the full amount of tariffs paid, including the additional 25 percent temporarily applicable to Turkish imports for the nine-month period from August 13, 2018 to May 21, 2019, from Noksel's export price is thus unsupported by substantial evidence and is otherwise not in accordance with law.

---

[1] The Court of International Trade has already found that the additional 25 percent tariff on imports from Turkey, which was imposed via Proclamation No. 9772 on August 10, 2018, is "unlawful and void" because it "lacks a nexus to national security, was issued without following mandated statutory procedures, and singles out importers of Turkish steel products in violation of Fifth Amendment Equal Protection and Due Process guarantees." *Transpacific Steel LLC v. United States*, 466 F. Supp. 3d 1246, 1249 (Ct. Int'l Trade 2020). This matter is currently under appeal to the Court of Appeals for the Federal Circuit. *See* CAFC Case No. 2020-2157.

AFDOCS/23902445.6

## COUNT III

23.     The facts and allegations contained in paragraphs 1 through 22 are restated and incorporated herein by reference.

24.     If it is determined that the Section 232 tariffs are properly deducted from U.S. price, the deduction should be limited to the 25 percent tariffs assessed pursuant to Presidential Proclamation 9705, and rather than the 50 percent tariffs assessed under Proclamation 9772. *See Adjusting Imports of Steel Into the United States, Proclamation No. 9705 of March 8,* 2018, 83 Fed. Reg. 11625 (Mar. 15, 2018) and *Adjusting Imports of Steel Into the United States, Proclamation No. 9772 of August 10, 2018*, 83 Fed. Reg. 40429 (Aug. 15, 2018). The 50 percent Section 232 tariffs applicable only to Turkish imports for a nine-month period were uniquely temporary in nature and more akin to special tariffs than to normal customs duties. Further, Proclamation 9772 has been determined by this Court to be unlawful and void, and cannot be applied as an adjustment to U.S price as a result. *Transpacific Steel LLC*, 466 F. Supp. 3d at 1259-60, appeal docketed, CAFC Case No. 2020-2157. Deducting the higher 50 percent tariffs from Noksel's export price is thus unsupported by substantial evidence and is otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court to:

(a)     Hold that Commerce's *Final AD Results* was not in accordance with law or unsupported by substantial record evidence with respect to the claims advanced by Plaintiff in this Complaint;

(b)     Remand the *Final AD Results* to Commerce for determination consistent with the opinion of this Court; and

(c)      Grant such additional relief as the Court may deem just and proper.


**/s/ Leah N. Scarpelli**
Leah N. Scarpelli
Matthew M. Nolan

Arent Fox LLP
1717 K Street, N.W.
Washington, DC 20006
Phone: (202) 715-8403

*Counsel to Noksel Celik Boru Sanayi A.S.*

Dated:  March 26, 2021